Daniel E. MANLEY, d/b/a Mr. Quik Lube, Daniel's, An Individual, and Thomas E. Manley, An Individual, Appellants,

v.

WACHOVIA SMALL BUSINESS CAPITAL, As Servicing Agent for Wachovia Bank, N.A., Successor–by–Merger to SouthTrust Bank, f/k/a Independent National Bank, Appellee.

No. 05–09–01228–CV.

Court of Appeals of Texas, Dallas.

Aug. 31, 2011.

---

David R. Weiner, Weiner Law Firm, Dallas, TX, for Appellants.

David M. O'Dens, Settle Pou, Dallas, TX, for Appellee.

Before Justices MOSELEY, BRIDGES, and O'NEILL.

## OPINION

Opinion By Justice MOSELEY.

This is a suit on a promissory note. Based on the jury's findings, the trial court rendered a judgment for the plaintiff, appellee Wachovia Small Business Capital (Wachovia). The defendants moved for a judgment notwithstanding the verdict (JNOV), which was denied. They appeal. For the reasons set forth herein, we affirm.

### BACKGROUND

The debt at issue is evidenced by a promissory note in the amount of $420,000 made in 1998 and payable to Independent National Bank. The note was signed by the borrower, appellant Daniel Manley, and secured by a deed of trust on real property and a security agreement. Daniel's father, appellant Thomas Manley, signed a guaranty of the note. After that it gets complicated.

Independent National Bank changed its name to SouthTrust Bank. Through a subsequent merger with SouthTrust Bank, Wachovia obtained the note.

In 2005, Daniel had trouble making payments on the note and began receiving default notices from Wachovia in October.

The last default notice before suit was filed was sent on February 16, 2007. On April 25, 2007, Wachovia filed suit to collect all amounts due and owing on the note and guaranty, and to obtain judicial foreclosure on the real property securing the loan. Appellants filed an answer.

At trial, Thomas testified that on October 16 or 18, 2006, he took $375,000 in $100 bills to a Wachovia branch in Irving as a payment on the note. Thomas testified he left the cash with a bank employee and asked for a receipt. He was told a receipt would be mailed to him after the amount was verified. Thomas never received a receipt. In January 2007, Daniel received the original note in the mail in a Wachovia envelope. The note had been stamped "Paid" on October 18, 2006. The original note was admitted in evidence at trial.

Wachovia employees testified they had no record of the $375,000 cash payment. Michelle Davis, customer relations manager for Wachovia, testified about Wachovia's normal audit procedures it follows when a note is paid and that there was no record of those procedures in the loan file for the note. Wachovia's assistant vice president, Thomas Arriaga, conducted an investigation to determine where the original note was, but did not find it. He had no idea how Daniel came to be in possession of the note or how it had been marked paid.

Arriaga testified that the note was not paid in October of 2006 and it was a mistake for Daniel to receive the note. Arriaga testified to the amount due and owing on the note. Both Davis and Arriaga testified that Wachovia was the owner of the note.

The jury found Daniel failed to comply with the terms of the note and Thomas failed to comply with the terms of the guaranty by failing to pay all of the sums due and owing under the note.[1] The jury also found specifically that Thomas did not "pay $375,000 to a Wachovia Bank employee on or about October 16, 2006, as payment on the . . . note." The trial court denied appellants motion for judgment notwithstanding the verdict or for new trial and rendered judgment on the jury's verdict.

Appellants appealed, asserting in two issues that the trial court erred by denying their motion for judgment notwithstanding the verdict.

## STANDARD OF REVIEW

We review the denial of a motion for judgment notwithstanding the verdict under a no-evidence standard. *See Tanner v. Nationwide Mut. Fire Ins. Co.,* 289 S.W.3d 828, 830 (Tex.2009). We "credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Cent. Ready Mix Concrete Co. v. Islas,* 228 S.W.3d 649, 651 (Tex.2007). We will uphold the jury's finding if more than a scintilla of competent evidence supports it. *Tanner,* 289 S.W.3d at 830.

---

1. The jury was instructed as follows:

 You are instructed that an obligor may discharge his obligation to pay a negotiable instrument to the extent payment is made (a) by or on behalf of a party obligated to pay the instrument and (b) to a person entitled to enforce the instrument.

 You are also instructed that a holder of a negotiable instrument may discharge the obligation of a party to pay that instrument by an intentional voluntary act, such as surrender of the instrument to the party or the addition of words to the instrument indicating discharge. An unintentional discharge/cancellation of a promissory note due to a mistake by the holder, however, is inoperative and does not discharge liability of the obligor.

 You are instructed that a promissory note is a "negotiable instrument."

 Appellants do not challenge these instructions on appeal.

"The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005).

### ANALYSIS

■ To recover on a promissory note, the plaintiff must prove: (1) the note in question, (2) the party sued signed the note, (3) the plaintiff is the owner or holder of the note, and (4) a certain balance is due and owing on the note. *Bean v. Bluebonnet Sav. Bank FSB,* 884 S.W.2d 520, 522 (Tex.App.-Dallas 1994, no writ); *see also Perkins v. Crittenden,* 462 S.W.2d 565, 568 (Tex.1970) (plaintiff must establish that he is the present legal owner or holder of the note sued upon).

### A. Intent to discharge

We first consider appellants' second issue, in which they assert the trial court erred by denying their motion for judgment notwithstanding the verdict because the evidence conclusively established the obligation on the note was discharged by Wachovia's intentional voluntary act of returning the note to Daniel and there is no evidence to support Wachovia's bare assertion of mistake in connection with returning the note to Daniel.[2] Specifically, appellants contend they conclusively proved that the obligation on the promissory note was discharged by Wachovia's intentional voluntary acts.

2. This issue attacks the sufficiency of the evidence in support of the fourth element of Wachovia's cause of action, i.e., that a certain balance is due and owing on the note. *See Bean,* 884 S.W.2d at 522.

3. Section 3.604 states:
 (a) A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument:

■ Appellants rely on section 3.604 of the business and commerce code, which provides that the person entitled to enforce the instrument may discharge the obligation by an intentional voluntary act.[3] Appellants contend Wachovia's acts of stamping the original note "paid" and sending it to Daniel were intentional and voluntary and are conclusive evidence that Wachovia discharged the note. Without citing authority, they assert that only the act (stamping and returning the note) must be intentional and voluntary, not the result (discharge of the obligation). We disagree.

■ Section 3.604 cannot be read to allow for the unintentional discharge of the obligation of a party to a negotiable instrument. Section 3.604 provides the means through which a person entitled to enforce the instrument may effectuate his intent to discharge the obligation. But it does not mean that a party entitled to enforce the note may—through the acts specified in the statute—unintentionally discharge the instrument.

Under the prior version of section 3.604, courts recognized that "cancellation of a negotiable instrument 'is a manifestation by act of intention with reference thereto to render same inefficacious as a legal obligation.'" *Gibraltar Sav. Ass'n v. Watson,* 624 S.W.2d 650, 652–53 (Tex.App.-Houston [14th Dist.] 1981, no writ) (quoting *Hickox v. Hickox,* 151 S.W.2d 913,

 (1) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge.

 TEX. BUS. & COM.CODE ANN. § 3.604 (West Supp. 2010).

917–18 (Tex.Civ.App.-El Paso 1941, no writ)). Discharge requires the intent to render the instrument ineffective as a legal obligation. Clearly, it is the result of the act—intentional discharge—not the act itself that has legal significance.

■ Like the prior statute, the current statute requires intentional and voluntary conduct to accomplish a discharge of the obligation. "This intent requirement has led courts, whether construing the pre-1990 or revised Article 3, to conclude that mistakenly marking a note "paid" (or the equivalent) will not discharge the debt." *G.E. Cap. Mortg. Servs., Inc. v. Neely*, 135 N.C.App. 187, 519 S.E.2d 553, 556–57 (1999). Thus, the unintentional or mistaken act of marking a note "paid" does not discharge the legal obligation to pay the debt.

■ The majority rule in other jurisdictions is that an unintentional or mistaken cancellation or return of the note does not discharge the obligation. *See Gloor v. BancorpSouth Bank*, 925 So.2d 984, 989 (Ala.Civ.App.2005) ("The majority of courts in other jurisdictions have held that the cancellation and surrender of an instrument has no effect when it is the product of mistake or clerical error."); *Neely*, 519 S.E.2d at 556–57 ("We now join the overwhelming majority of those jurisdictions and hold that cancellation and surrender of a promissory note due to clerical error or mistake alone does not provide the requisite intent to effectively discharge the debt represented by that note."). The uniform commercial code is to be liberally construed and applied to promote its underlying purposes and policies, one of which is "to make uniform the law among the various jurisdictions." TEX. BUS. & COM. CODE ANN. § 1.103(a)(3) (West 2009).

Appellants' argument ignores evidence that stamping the note paid and returning it were not intentional but were a mistake. There is evidence that although the note was stamped paid on October 18, 2006, it had not, in fact, been paid and amounts remained due and owing at the time of trial. Appellants rely on evidence of the $375,000 cash payment plus other payments made by Daniel to support their payment defense. The jury rejected this defense and appellants do not challenge that finding on appeal.

There is also evidence Wachovia's normal procedures following the payment of a note were not followed in this case, and Arriaga testified that it was a mistake for Daniel to receive the note. This, along with other evidence in the record, is some evidence that the surrender of the note and stamping it paid were the result of a mistake and not intentional or voluntary.

In light of all the evidence in the record, we conclude the mere fact Daniel received the original note in a Wachovia envelope with "paid" stamped on it does not conclusively prove that Wachovia, by an intentional voluntary act, discharged Daniel's obligation on the note. We overrule appellants' second issue.[4]

## B. Person entitled to enforce

We next consider appellants' first issue, in which they assert the trial court erred by denying their motion for judgment notwithstanding the verdict because there is no evidence Wachovia is entitled to enforce

---

4. In the last two sentences of the argument under their second issue, appellants state that a new trial should have been granted because the jury's findings that they failed to comply with the terms of the note were against the great weight and preponderance of the evidence and the evidence was factually insufficient to support the finding that Wachovia's discharge or cancellation of the note was unintentional or due to a mistake. We reject these arguments as inadequately briefed. *See* TEX.R.APP. P. 38.1(i).

the note.[5] Appellants assert that, because it was undisputed the note was returned to Daniel stamped "paid," Wachovia failed to establish it was the holder of the note or a person entitled to enforce it.

The UCC defines "person entitled to enforce" an instrument as (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3.309 or 3.418(d). TEX. BUS. & COM.CODE ANN. § 3.301. A "holder" is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." TEX. BUS. & COM.CODE ANN. § 1.201(b)(21) (West 2009).

Wachovia alleged in its petition that it was the owner and holder of the note and entitled to recover all monies due and owing under the terms of the note. However, Wachovia does not dispute that the original note was returned to Daniel and was in his possession before it was admitted in evidence at trial.[6] As indicated above, Wachovia presented evidence explaining that Daniel's possession of the note was a mistake and Wachovia did not intentionally discharge the obligation on the note.

▮ Appellants contend there is no evidence that Wachovia was a person entitled to enforce the note because it did not have possession of the note and does not qualify as a person entitled to enforce the note under business and commerce code section 3.309. See TEX. BUS. & COM.CODE ANN. § 3.309 (West Supp. 2010).[7] Section 3.309 does not apply here because the note was not lost, stolen, or destroyed. Appellants argue in effect that Wachovia was first required to file a suit to obtain possession of the note before it could file suit to collect on it. We disagree. The location of the note was known and a suit to obtain possession of the original note was not necessary because the trial court could have required appellants to produce it if they had not done so at trial.

Appellants argue Wachovia is not a holder because it did not have possession of the note at the time of trial. A similar argument was made in another case involving the mistaken return of a promissory note to the borrower. See Neely, 519 S.E.2d at 558 (discussed above in connection with

---

5. Appellants' first issue attacks the sufficiency of the evidence in support of the third element of Wachovia's cause of action. See Bean, 884 S.W.2d at 522 (plaintiff is the owner or holder of the note).

6. The note is payable to the order of Independent National Bank. The copy of the note in the record does not show any indorsement, but it is undisputed that Independent National Bank changed its name to SouthTrust Bank and that SouthTrust Bank merged with Wachovia.

7. Section 3.309(a) provides:
(a) A person who is not in possession of an instrument is entitled to enforce the instrument if:
(1) the person seeking to enforce the instrument:

(A) was entitled to enforce the instrument when loss of possession occurred; or
(B) has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred;
(2) the loss of possession was not the result of a transfer by the person or a lawful seizure; and
(3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.
TEX. BUS. & COM.CODE ANN. § 3.309(a).

the intentional discharge argument). The court rejected the argument as overtechnical.[8]

■ We agree that appellants' argument is overly technical and places undue emphasis on physical possession of the note. This is particularly true in this case, where the location of the original note was not in doubt and it was admitted in evidence at trial. Thus, one of the main concerns of the UCC—protecting the debtor from double liability should the note come into the hands of a later holder—is not implicated here.[9]

■ Additionally, Texas law recognizes that even if a person is not the holder of a note, he may prove that he is the owner and entitled to enforce the note. *See Nelson v. Regions Mortg., Inc.*, 170 S.W.3d 858, 864–65 (Tex.App.-Dallas 2005, no pet.) ("we cannot say a court would never uphold enforcement of a note by an owner who was not in possession of an original note"); *Leavings v. Mills*, 175 S.W.3d 301, 309–10 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *Jernigan v. Bank One, Tex., N.A.*, 803 S.W.2d 774, 776–77 (Tex.App.-Houston [14th Dist.] 1991, no writ). The owner of a note may enforce the note even if he is not a holder. *Waters v. Waters,* 498 S.W.2d 236, 241 (Tex.Civ.App.-Tyler 1973, writ ref'd n.r.e.).

It would be inequitable to conclude that the owner of an unpaid note who did not have possession of the original note due to a mistake could not sue to enforce the note. *See* TEX. BUS. & COM.CODE ANN. § 1.103(b) (unless specifically displaced, UCC is supplemented by principles of law and equity such as assignment, agency, and mistake); *Nelson,* 170 S.W.3d at 864.

■ The evidence is undisputed that: Daniel obtained the loan from Independent National Bank, signed the note, and received the money; his father signed a guaranty; and Wachovia owned the note through a name change and merger. There is evidence: the note had not been paid; amounts were due and owing to Wachovia; Wachovia did not intentionally discharge the note; and that the note was returned to Daniel by mistake. The jury expressly rejected appellants' payment evidence. We conclude there is more than a scintilla of evidence to support the conclusion that Wachovia owned the note and was entitled to receive payment on it. We overrule appellants' first issue.

---

8. The opinion in *Neely* stated:

Defendants argue that plaintiff forfeited its status as holder when it turned over possession of the instruments to defendants. However, defendants' argument is overly technical and places undue weight on the element of physical possession. In construing the statutory definition of holder, this Court has previously stated, "[T]he mere absence of the note from the owner's possession does not defeat his right to bring the action to enforce the terms of the note." *Good v. Good,* 72 N.C.App. 312, 315, 324 S.E.2d 43, 45, disc. review denied, 313 N.C. 600, 330 S.E.2d 609 (1985). White and Summers, the leading commentators on the UCC, clarified: "When the obligor has possession, the party suing on the instrument has to overcome a presumption that the instrument was discharged. Proof of the fact that the debtor never satisfied the underlying obligation ... can meet this burden." 2 James J. White & Robert S. Summers, *Uniform Commercial Code: Practitioner Treatise Series* § 16–13, at 134–35 (4th ed. 1995). Plaintiff has met that burden here and thus is entitled to enforce both the Note and Deed of Trust.

*Neely,* 519 S.E.2d at 558.

9. *See* TEX. BUS. & COM.CODE ANN. § 3.309(b) (providing that the court may not render judgment "unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument").

## CONCLUSION

We conclude there was some evidence that Wachovia was the owner of the note and entitled to enforce it, and that appellants failed to conclusively establish that Wachovia intentionally discharged the obligation on the note. Thus the trial court did not err by denying appellants' motion for judgment notwithstanding the verdict. We affirm the trial court's judgment.