# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00036-CV

**Appellant, Mohammed Hadi Gharbi, aka M. H. Gharbi aka Mike Gharbi//
Cross-Appellant, Majid Hemmasi**

**v.**

**Appellee, Majid Hemmasi//Cross-Appellee, Mohammed Hadi Gharbi,
aka M. H. Gharbi aka Mike Gharbi**

**FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
NO. 279,045, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Mohammed Hadi Gharbi appeals from the trial court's judgment awarding Majid Hemmasi $68,411.52 for the principal amount due on a promissory note Gharbi executed in connection with his purchase of 28 condominium units in the City of Lago Vista (the Property) from Hemmasi and Farhad Bordbar. The trial court also awarded Hemmasi $49,863.55 in pre-judgment interest and $23,210.79 in attorneys' fees. In nine issues, Gharbi challenges the judgment on a number of grounds, including assertions that Hemmasi did not have the capacity to bring a suit on the note, that the statute of limitations barred his claim, and that he was not entitled to an award of attorneys' fees. Gharbi also contends that the trial court erred by rendering judgment against him on his various claims for violations of the Deceptive Trade Practices-Consumer Protection Act. *See* Tex. Bus. & Com. Code §§ 17.41-.63 (DTPA). Hemmasi has brought a cross-appeal challenging the trial court's

order offsetting from the principal amount due under the note the amount of a statutory lien the City of Lago Vista placed on the Property and the trial court's calculation of pre-judgment interest. We will modify the judgment and, as modified, affirm it.

**BACKGROUND**

This is a suit on a promissory note Gharbi executed in connection with his purchase of condominium units located in the City of Lago Vista from Hemmasi and Bordbar.[1] The note was in the principal amount of $77,000, was payable to "Majid Hemmasi, Trustee," and provided for interest on all mature, unpaid amounts at the rate of ten percent per annum. The note permitted monthly interest-only payments from July 29, 1998 through July 29, 2000, at which time the entire amount of unpaid principal and interest was due and payable. Soon after the sale of the condominium units closed, Hemmasi and Bordbar, purporting to act on behalf of "Majid Hemmasi, Trustee," assigned and transferred the note to Hemmasi individually. Thereafter, Gharbi defaulted on the note, and Hemmasi sued to recover the unpaid principal and interest due thereunder. Gharbi filed a counterclaim against Hemmasi, alleging causes of action for fraud and violations of the DTPA.

Following a bench trial, the trial court found that Gharbi had defaulted on the note, but also found that Hemmasi had breached an implied covenant against encumbrances on the condominiums because the City of Lago Vista had placed a statutory lien on the Property prior to the conveyance to Gharbi. *See* Tex. Prop. Code § 5.023(a) (use of term "grant" or "convey" in

---

[1] The parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial. Accordingly, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1.

conveyance of fee simple implies that at time of execution of conveyance estate is free from encumbrances). The trial court rendered judgment that Hemmasi recover the principal amount of $77,000 less an offset of $8,588.48, the amount of the statutory lien plus interest, $49,863.55 in pre-judgment interest, and attorneys' fees in the amount of $23,210.79. The trial court filed extensive findings of fact and conclusions of law in support of the final judgment. This appeal followed.

## DISCUSSION

### *Hemmasi's Capacity to Sue*

In his first issue, Gharbi asserts that Hemmasi did not have capacity to sue on the note. The note identifies the payee as "Majid Hemmasi, Trustee." The trial court found that the use of the word "trustee" reflected the fact that, at the time of the sale, both Hemmasi and Bordbar had ownership interests in the Property and that Hemmasi would receive the payments under the note in trust for both of them. Gharbi contends that, as a consequence, Hemmasi did not have standing to bring a suit on the note in his individual capacity and that Bordbar never transferred his interest in the note to Hemmasi. The trial court expressly found that Bordbar assigned and transferred his interest in the note to Hemmasi on July 15, 1998. This finding is supported by evidence in the record that Hemmasi and Bordbar executed an assignment of the note to Hemmasi on July 15, 1998. The assignment was admitted into evidence as an exhibit. Both Hemmasi and Bordbar testified that the assignment was done specifically so that Hemmasi, as owner of the note, could deal with Gharbi individually.

On appeal, Gharbi asserts that the transfer of the note to Hemmasi was invalid because the note contains no written indorsement demonstrating that the maker of the note assigned

3

it to Hemmasi. *See* Tex. Bus. & Com. Code §§1.201(21), 3.201. Gharbi is correct that Hemmasi does not appear to be a "holder" of the note as that term is defined by the Uniform Commercial Code. However, "Texas law recognizes the difference between a 'holder' and an 'owner' of a promissory note." *Martin v. New Century Mortg. Co.*, 377 S.W.3d 79, 84 (Tex. App.—Houston [1st Dist.] 2012, no pet.). A person can become a "holder" of a note through negotiation, which requires "transfer of possession of the instrument and its indorsement by the holder." Tex. Bus. & Com. Code § 3.201(b). If an instrument not in the possession of the original holder is not indorsed, then the person in possession of it does not have the status of a "holder." *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Nevertheless, under common-law principles of assignment, a person who fails to qualify as a "holder" for lack of an indorsement may still prove that he owns the note. *Martin*, 377 S.W.3d at 84; *Leavings*, 175 S.W.3d at 309. An owner may transfer a note without indorsement. *Martin*, 377 S.W.3d at 84; *Leavings*, 175 S.W.3d at 309. In that case, the transferee acquires whatever rights the transferor had in the note even though he does not become the note's "holder." *Martin*, 377 S.W.3d at 84. The owner of a note may enforce the note even if he is not a "holder." *Manley v. Wachovia Small Bus. Capital*, 349 S.W.3d 233, 240 (Tex. App.—Dallas 2011, pet. denied).

The record contains ample evidence that the note was transferred by its makers to Hemmasi individually, and the trial court properly found that he had standing to bring suit on the note upon Gharbi's default.[2] Gharbi also maintains that Hemmasi only had the right to recover

---

[2] Gharbi also states that Hemmasi did not produce an original copy of the note at trial and that Bordbar testified that he made the assignment of the note to Hemmasi to give him "power over the land." Gharbi does not provide any legal theory supporting his position that these facts somehow deprive Hemmasi of the right to bring suit on a promissory note that was transferred to him.

half of the amount due on the promissory note because Bordbar testified at trial that he expects to receive from Hemmasi a portion of any recovery under the note. The fact that Bordbar might ultimately be entitled to a portion of any money collected on the note does not defeat Hemmasi's right to bring a suit on the note. *See, e.g.*, *FFP Mktg. Co., Inc. v. Long Lane Master Trust IV*, 169 S.W.3d 402, 411 (Tex. App.—Fort Worth 2005, no pet.) (legal owner of promissory note may maintain cause of action even though another person is actual or beneficial owner). We overrule Gharbi's first appellate issue.[3]

### *Judgment that Gharbi Take Nothing on his DTPA Claims*

In his third and fourth issues, Gharbi contends that the trial court erred by rendering judgment against him on his DTPA claims and that the promissory note should be cancelled for failure of consideration. The majority of Gharbi's briefing of this issue consists of a general discussion of various provisions of the DTPA and cases construing it, along with the assertion that he had viable DTPA claims against Hemmasi. While these two issues raise a broad challenge to the trial court's judgment against him, Gharbi does not specifically challenge any of the trial court's extensive findings of fact or conclusions of law supporting that judgment. Unchallenged findings of fact are binding on this Court unless the contrary is established as a matter of law or there is no evidence to support the findings. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). We have reviewed the testimony and exhibits admitted in the trial court. In summary, the evidence

---

[3] We also overrule Gharbi's second issue in which he asserts that any suit on the note is barred by limitations. Gharbi's argument is based on the incorrect premise that the assignment to Hemmasi was ineffective and that the only party with capacity to sue on the note was "Majid Hemmasi, Trustee," who failed to file suit within the limitations period.

supports the trial court's conclusion that Hemmasi did not violate the DTPA in connection with the sale of the Property to Gharbi. There was evidence that Gharbi was an experienced real estate professional who was familiar with the Property. Gharbi had visited the Property with Hemmasi when Hemmasi made his original decision to purchase it in 1993. At that time the Property was in poor condition and uninhabited. Gharbi had repeatedly attempted to participate financially in renovating the Property. Gharbi was aware of Hemmasi's efforts to renovate the Property and ultimately asked Hemmasi to sell him the Property. Hemmasi provided Gharbi with his entire file regarding the Property, which included correspondence from the City of Lago Vista regarding plans to condemn the Property as early as September 1994. Gharbi inspected the Property prior to purchasing it in 1998 and waived an inspection by the title company. Gharbi presented no evidence that Hemmasi knew that there was asbestos or any other hazardous material on the Property and testified at trial that he had no knowledge of whether Hemmasi knew of any hazardous conditions on the Property before the sale. Hemmasi testified that he did not have knowledge of any asbestos or hazardous materials on the Property.

Although Gharbi argues on appeal that Hemmasi's failure to disclose a statutory lien on the Property was an actionable breach of warranty under the DTPA, his pleadings do not support that claim. Gharbi alleged only breach of the implied warranty of fitness for a particular purpose and the implied warranty of merchantability. There is also evidence in the record, including Gharbi's own testimony, supporting the trial court's finding that Hemmasi made no representations to Gharbi about the condition of the property and was not aware that the City of Lago Vista had placed a lien on the Property. Gharbi has failed to demonstrate that the trial court's judgment against him on his

6

DTPA claims was error. We overrule Gharbi's third issue. We also overrule Gharbi's fourth issue in which he contends that "the trial court erred by not ruling that the consideration paid by Gharbi for the Property failed in whole or in part because of latent defects." The evidence before the trial court supports its findings that Gharbi was aware of the condition of the Property when he purchased it, could have returned the Property to habitable condition but did not do so because of problems with the homeowner's association, and that the Property was ordered demolished only after a fire in 2001, three years after Gharbi purchased it.

***Complaints about the Amount of the Judgment***

In his fifth issue, Gharbi argues that the trial court's money judgment does not take into account all of the payments he claims to have made on the note. Gharbi specifically challenges the following findings of fact and conclusions of law:

> FOF 45: Defendant M.H. Gharbi made only two payments on the note to Plaintiff Majid Hemmasi that were cashed by Plaintiff Majid Hemmasi, a $3,850.02 payment on May 29, 2000, which represented 6 payments of $641.47 and $3,208.35 on October 29, 2000 which represented 5 payments of $641.47.

> FOF 46: These are the only payments that were credited to the interest due on the Real Estate Lien Note.

> FOF 47: Defendant M.H. Gharbi made no payments to the principal of the Real Estate Lien Note.

> FOF 48: Defendant M.H. Gharbi was in default of the Real Estate Lien Note on June 29, 2000 when he failed to pay the entire amount of principal and interest then remaining.

> COL 11: Defendant defaulted on the Note on June 29, 2000 and therefore, Plaintiff is entitled to judgment and recovery on the Real Estate Lien Note in the amount of $77,000 principal, plus pre-judgment interest.

7

COL 15: Taking into consideration Defendant's offset of $8,588.48, Plaintiff Majid Hemmasi is entitled to a judgment against Defendant M.H. Gharbi for $68,411.52 in principal and $49,863.55 in pre-judgment interest because of Defendant's default of the Real Estate Lien Note.

Gharbi maintains that these findings and conclusions are erroneous because they fail to take into consideration twelve interest-only payments of $641.67 he made between August 1998 and July 1999. As evidence of these payments, Gharbi points to Hemmasi's trial exhibit 12, which is a payment schedule for the note. In the "Payment Amount" column are shown twelve payments of $641.67. However, Hemmasi testified that the checks Gharbi presented to him were made payable to "Majid Hemmasi, Trustee." Hemmasi testified that he told Gharbi that the note had been transferred to him individually and that payments needed to be made by check payable to him individually. On all but two checks, Gharbi did not follow that instruction and Hemmasi testified that the only checks he cashed were the two that were made payable to him individually—the two interest payments referred to in finding of fact 45. The evidence in the record establishes that Hemmasi accepted and properly applied to the balance due on the note the two checks made payable to him individually and rejected the other twelve payments and did not cash those checks. The trial court's findings of fact 45 through 48 are supported by legally and factually sufficient evidence. We overrule Gharbi's fifth issue.

***Propriety of the Offset for the Amount of the Statutory Lien***

At some point prior to Gharbi's acquisition of the Property, the City of Lago Vista placed a statutory lien on the Property. The trial court found that the presence of the lien violated the implied covenant of no encumbrances and, as a consequence, the balance due on the note should be offset by $8,588.48, an amount it determined to be the principal and interest owed to the City for

8

discharge of the lien. *See* Tex. Prop. Code § 5.023(a) (use of terms "grant" or "convey" creates implied covenant that at time of execution of conveyance estate is free from encumbrances), (b) (implied covenant under this section may be basis for lawsuit as if it had been expressed in conveyance). Gharbi's sixth issue challenges the amount of interest included in the trial court's offset of $8,588.48. Gharbi contends that the trial court erred in calculating the interest component of this offset. In the first two issues of his cross-appeal, Hemmasi argues that the entire offset was improper because Gharbi did not allege that Hemmasi breached the implied covenant of no encumbrances and that theory of liability was not tried by consent. We agree with Hemmasi.

Gharbi did not assert a claim that Hemmasi breached an implied covenant that the Property was free from encumbrances. In his counterclaim, Gharbi pleaded only that Hemmasi violated the implied warranty of fitness for a particular purpose and the implied warranty of merchantability. Gharbi introduced evidence that Hemmasi did not disclose the existence of the statutory lien on the Property as a defense to the suit on the note and in support of his claim that Hemmasi failed to disclose material facts to him about the Property prior to closing. The trial court found, however, that Hemmasi did not know about the statutory lien when he sold the property to Gharbi. Therefore, Gharbi was unsuccessful in obtaining any affirmative relief on that basis. The existence of the statutory lien also did not fall within any of the defenses Gharbi pleaded. Specifically, Gharbi did not plead offset or that the amount of the statutory lien should be deducted from any liability under the note. Consequently, the only basis for the trial court to make the offset was by finding that a claim to an offset in the amount of the statutory lien was tried by consent. *See* Tex. R. App. P. 67 ("[W]hen issues not raised by the pleadings are tried by express or implied

9

consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983) ("Thus, a party may not be granted relief in the absence of pleadings to support that relief."); *Elliott v. Hollingshead*, 327 S.W.3d 824, 836 (Tex. App.—Eastland 2010, no pet.) (concluding that party may not be granted relief in absence of adequate pleadings unless issue is tried by consent).

After trial, Gharbi moved for leave to file a post-trial supplemental pleading in which he did assert that the existence of the statutory lien constituted a breach of the implied covenant against encumbrances. *See* Tex. Prop. Code § 5.023. In post-trial briefing, Hemmasi objected to any offset under the unpleaded theory of breach of the implied covenant against encumbrances. In response, Gharbi asserted that the issue had been tried by consent. The trial court granted Gharbi leave to file his supplemental pleading, which is the only basis for the trial court's offset of the amount of the statutory lien from the balance due on the note. The parties join issue on whether the trial court erred in concluding that the unpleaded claim of breach of the implied covenant against encumbrances was tried by consent. We hold that it did.

Issues not raised in the pleadings can be tried by express or implied consent of the parties. *See* Tex. R. Civ. P. 67; *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied); *Pickelner v. Adler*, 229 S.W.3d 516, 523 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). The trial court has broad discretion in determining whether an unpleaded issue was tried by consent. *Case Corp.*, 184 S.W.3d at 771. Although that discretion is to be exercised liberally in favor of a just result, trial by consent is the exception, not the rule, and should not be inferred in doubtful cases. *Id.* at 772. An unpleaded issue may be found to have been tried

10

by consent only when it "appears from the record that the issue was actually tried, although not pleaded." *Id.* at 771. To determine whether the unpleaded issue was tried by consent, the trial court must examine the record not merely for evidence of the issue, but rather for evidence that the issue was "tried." *Id.*; *Moore v. Altra Energy Techs., Inc.*, 321 S.W.3d 727, 734 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). The unpleaded issue may be deemed tried by consent when the evidence on the issue is developed without objection under circumstances indicating both parties understood the issue was being contested. *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009) ("When both parties present evidence on an issue and the issue is developed during trial without objection, any defects in the pleadings are cured at trial, and the defects are waived.").

An issue can be deemed tried by consent when both parties present conflicting evidence on the subject. *Id.* However, an issue is not tried by consent when the evidence relevant to the unpleaded issue is also relevant to a pleaded issue. In that circumstance, "admitting the evidence would not be calculated to elicit an objection and its admission ordinarily would not prove the parties' 'clear intent' to try the unpleaded issue." *Case Corp.*, 184 S.W.3d at 771, *see also Moore*, 321 S.W.3d at 734.

There was no trial by consent of a claim for breach of an implied covenant against encumbrances in this case for two reasons. First, the existence of the statutory lien on the Property at closing was not the subject of conflicting evidence at trial. *See Ingram*, 288 S.W.3d at 893 (issue is not tried by consent merely because there was evidence on issue, rather parties must present conflicting evidence). Hemmasi did not contest the fact that the City of Lago Vista had placed a statutory lien on the Property before it was sold to Gharbi. The conflicting evidence at trial was

11

whether Hemmasi knew of the statutory lien's existence prior to closing but failed to disclose it to Gharbi. Whether the seller knows of the encumbrance at closing is not an element of, nor relevant to, a claim for breach of an implied covenant against encumbrances. *See* Tex. Prop. Code § 5.023; *Natland Corp. v. Baker's Port, Inc.*, 865 S.W.2d 52, 61 (Tex. App.—Corpus Christi 1993, writ denied) (statutory covenant against encumbrances is breached, if at all, upon execution and delivery of deed) (citing *City of Beaumont v. Moore*, 202 S.W.2d 448, 453 (Tex. 1947)). Thus, there was no conflicting evidence at trial germane to a claim for breach of the implied covenant against encumbrances. Second, the evidence regarding the statutory lien was relevant to a pleaded issue; i.e., whether Hemmasi failed to disclose material information about the Property. Thus, its admission without objection does not demonstrate a "clear intent" by the parties to try the unpleaded issue of breach of an implied covenant against encumbrances. *See Case Corp.*, 184 S.W.3d at 771. The trial court erred by including in its judgment the $8,588.48 offset. We sustain the first and second issues raised in Hemmasi's cross-appeal and we overrule Gharbi's sixth issue.[4]

### Challenges to Attorneys' Fee Award

In his seventh issue, Gharbi challenges the trial court's award of attorneys' fees to Hemmasi on the ground that "there was no evidence that [his] counsel was licensed to practice law in Texas." Without citing any supporting authority, Gharbi asserts that "[t]estimony or evidence that an attorney is licensed to practice law in the State of Texas is required in order to recover attorney's

---

[4] Having sustained Hemmasi's first two issues, we need not address the third issue in his cross-appeal, which advances an alternative reason that including the offset in the judgment was error. *See* Tex. R. App. P. 47.1 (court should write brief memorandum opinion no longer than necessary to advise parties of court's decision and basic reasons for it).

12

fees in a Texas court." There is no such requirement in the statute providing for recovery of attorneys' fees in a breach of contract case. *See* Tex. Civ. Prac. & Rem. Code §§ 38.001-.002. Even if this were a requirement for the recovery of attorneys' fees under chapter 38 of the Texas Civil Practice and Remedies Code, Hemmasi's counsel's State Bar of Texas license number appears on every pleading filed in the trial court. He also testified that he was licensed to practice law in 1969 after graduating from the University of Texas School of Law, and that after graduating from the University of Texas he worked for the Governor's Office, Criminal Justice Division and in the Consumer Protection Division of the Texas Attorney General's office. It is more than evident that Hemmasi's attorney has been licensed to practice law in this State since 1969. Moreover, Hemmasi sought attorneys' fees pursuant to the terms of the note, which authorized the recovery of reasonable attorneys' fees if suit was brought for its collection or enforcement. Gharbi has provided no authority, nor have we found any, that would require evidence of an attorney's Texas license when attorneys' fees are available based on a contractual provision. *See Franco v. Lopez*, 307 S.W.3d 551, 555 (Tex. App.—Dallas 2010, no pet.) (rejecting argument that attorneys' fees were not recoverable in suit on guaranty because there was no evidence that counsel was licensed in Texas). Gharbi's seventh issue is overruled.

In his eighth issue, Gharbi argues that the trial court's award of attorneys' fees was error because Hemmasi made no pre-suit demand for payment. In his pleading, Hemmasi requested attorneys' fees pursuant to the terms of the note. The note expressly provides for the recovery of attorneys' fees and waiver of demand or presentment for payment. Pursuant to the note's express terms, Gharbi waived demand and presentment and agreed to pay attorneys' fees. The trial court did

13

not err in awarding attorneys' fees to Hemmasi. *See Escalante v. Luckie*, 77 S.W.3d 410, 423 (Tex. App.—Eastland 2002, pet. denied) (trial court erred in concluding party not entitled to attorneys' fees when contract sued on expressly waived demand or presentment and provided for recovery of attorneys' fees). We overrule Gharbi's eighth issue.

In his ninth issue, Gharbi asserts that the trial court erred by awarding attorneys' fees in an amount greater than ten percent of the amount due on the note. Gharbi relies on the following provision in the note:

> If this note . . . is given to an attorney for collection or enforcement, or if suit is brought for collection or enforcement . . . then Maker shall pay Payee reasonable attorney's fees in addition to other amounts due. Reasonable attorney's fees shall be 10% of all amounts due unless either party pleads otherwise.

Gharbi maintains that Hemmasi did not "plead otherwise" and consequently his attorneys' fee award is limited to ten percent of the amount due on the note. We disagree. In his petition, Hemmasi did not plead for attorneys' fees of ten percent but rather for "reasonable attorneys' fees and expenses of *this litigation*." (Emphasis added.) The request included an award for fees incurred in the investigation, negotiation, preparation, and trial of the case, as well as for further proceedings in the appellate courts. In his answer to Gharbi's counterclaims, Hemmasi requested reasonable fees for defending the suit. At trial, Hemmasi's counsel testified as to his reasonable and necessary attorneys' fees, which were in excess of ten percent of the amount due on the note. Hemmasi's request for attorneys' fees was plainly not limited to the note's ten percent cap. We overrule Gharbi's ninth issue.

14

***Amount of Pre-judgment Interest Awarded***

In the fourth issue in his cross-appeal, Hemmasi contends that the trial court erred in calculating the amount of pre-judgment interest due on the note. The trial court awarded pre-judgment interest in the amount of $49,863.55. According to Hemmasi, the proper amount of pre-judgment interest owed is $66,369.11.[5] Hemmasi attributes the difference to the trial court's failure to award Hemmasi interest that accrued on the matured, but unpaid, "interest only" installments due under the note. The note provided that installments of interest only were due and payable on the 29th day of each calendar month beginning July 29, 1998 until July 29, 2000, whereupon the entire amount of unpaid principal and interest would be due and payable. The note also provided for simple interest of ten percent on matured, unpaid amounts, which Hemmasi contends includes any delinquent "interest only" installments. In his brief, Gharbi also agrees that the correct way to calculate interest under the note is that "the principal should earn interest, and that matured interest payments should earn interest, and that the sum of those two calculations is the amount due." While Gharbi reurges the claim he made in his fifth appellate issue—seeking credit for the twelve interest-only payments that Hemmasi rejected because they were not made payable to him individually—he concurs with Hemmasi on the proper method of calculating interest under the note. In light of the parties' agreement in this regard, we will sustain Hemmasi's fourth appellate issue and hold that the correct amount of pre-judgment interest due on the note is $66,369.11.

---

[5] This calculation is based on excluding the offset from the judgment, as we have agreed should be done, which makes the principal amount due on the note the full $77,000.

## CONCLUSION

For the reasons stated in this opinion, we modify the trial court's judgment to order that Hemmasi recover from Gharbi the original principal amount of $77,000 and pre-judgment interest in the amount of $66,369.11. In all other respects, the trial court's judgment is affirmed.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Goodwin

Modified and, as Modified, Affirmed

Filed:   August 6, 2015

16